# EXHIBIT A

# Complaint

| | |
|---|---|
| DISTRICT COURT, BOULDER COUNTY, COLORADO<br><br>Court Address:  1777 6th Street<br>                 Boulder, CO 80306 | DATE FILED: June 13, 2018 9:01 AM<br>FILING ID: 5B4C179FEF7DB<br>CASE NUMBER: 2018CV30559 |
| Emily Everett, individually,<br><br>Plaintiff:<br><br>v.<br><br>Sample Supports, LLC, a Colorado limited liability company.<br><br>Defendants: | ▲  COURT USE ONLY  ▲<br><br>Case Number: |
| Attorney for Emily Everett<br>Thomas H. Mitchiner<br>Mitchiner Law LLC<br>1888 N Sherman St Ste 200<br>Denver, CO 80203<br>Phone Number:  720-538-0371<br>E-mail:  tmitchiner@mitchinerlawllc.com<br>Atty. Reg. #:  47465 | Div.:        Ctrm: |
| **COMPLAINT** | |

COMES NOW Emily Everett, by and through her attorney, Thomas H. Mitchiner, of Mitchiner Law, LLC, for her Complaint against Sample Supports, LLC and states and alleges as follows:

### Nature of the Case

1. This is a wage and hour case, brought pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et. seq.*, as amended (FLSA), the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et. seq.*, as amended (CWCA). Emily Everett (Everett) also asserts claims for implied breach of contract and promissory estoppel against Sample Supports, LLC (Supports) for the signing off of her supervised counseling hours for her Licensed Professional Counsel (LPC) certification.

2. Everett alleges that Supports violated state and federal wage and hour laws, by failing to pay Everett overtime at a time and a half for all the hours she worked over forty in a week and failing to pay overtime for the time Everett worked over twelve hours in a day.

3. Under applicable employment law, an employee is classified as exempt versus non-exempt according to their job duties, *not their job title*. Non-Exempt employees are entitled to overtime compensation regardless of whether they have an exempt title if their duties do not reflect "exempt job duties" under the FLSA or the CWCA.

4. Furthermore, to qualify as an exempt employee under the FLSA the employee must be paid a salary of at least $455 per week *and* meet the job duties test.

5. To qualify for the administrative exemption employees must exercise the requisite discretion, management and independent judgment with respect to matters of significance (*e.g.*, hiring and firing), and should not perform menial work duties (*e.g.*, answering high volume phone calls).

## Parties

6. Plaintiff, Emily Everett is a citizen of the United States her address is 1728 Concord Dr. Ft. Collins, CO 80526.

7. Defendant, Sample Supports, LLC (Supports), is a for-profit Colorado limited liability company with its offices located at 620 Kimbark St., Longmont, CO 80501.

8. Supports is a for profit corporation providing social services to at risk residents in three regions in Colorado: Northern Region, Boulder County Region, and Denver Region.

9. In each region Supports offers services for youths, adults and seniors such as residential services, community day program, supported employment services, supported life services, behavior program and foster care.

10. Supports employed Everett from around June 8, 2016 and her employment with Supports ended in August of 2017.

11. Supports employed Everett to work as the Northern Region Program Manager for Behavior and Supported Life Skills.

12. Everett is currently a Licensed Professional Counselor Candidate (LPCC) and only needs to complete her supervised counseling hours to become an LPC.

13. An LPC or a Licensed Clinical Social Worker (LCSW) can supervise the LPCC's counseling hours.

14.     During her initial interviews for the position, Everett made it known to Richelle Reed (Reed) and Carmen Sample (Sample), that upon accepting the position with Supports she intended to continue to accrue hours towards her LPC.

15.     Reed and Sample agreed that Everett should continue to accrue these hours and indicated that she could do so well working for Supports. Reed and Sample made this representation to Everett knowing that in order to have the hours she worked for Supports to count a licensed LPC had to supervise and sign off on her work.

16.     Over the course of her employment with Supports Everett, Reed and Sample revisited Everett's request for supervised counseling hours, and again all parties agreed the hours she worked would be signed off on.

17.     Supports paid Everett a salary of $44,928 per year, or $864.67 per week for 40 hours a week of work from June 2016 to May of 2017, and $20 per hour from May 2017 to August of 2017.

**Jurisdiction and Venue**

18.     This Court has subject matter jurisdiction over this matter pursuant to Colo. Const. Art. VI, § 9 because this is a civil action for damages and/or equitable relief.

19.     This Court has personal jurisdiction over Supports because it is a Colorado limited liability company registered to business in the state of Colorado, and at all relevant times, it transacted business within Colorado, owns, uses and possesses real property within this state.

20.     Venue in the District Court for the Boulder County, Colorado is proper pursuant to Colo. R. Civ. P. 98(c)(1) because Supports' principal place of business is in Boulder County, Colorado

21.     During all times relevant to this Complaint, Supports has employed more than two employees and generated more than $500,000 in revenues. Further, Supports and Everett engaged in interstate commerce.

22.     Supports qualifies for and is subject to both traditional and enterprise coverage under the FLSA for all the relevant time periods contained in this Complaint, therefore Supports is subject to the Fair Labor Standards Act (FLSA).

23.     At all relevant times Supports has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of FLSA 29 U.S.C. §§ 206(a) and 207(a).

24.     Supports is a business employing persons in Colorado and as such is subject to the CWCA pursuant to 7 CCR 1103-1(2).

3

25. Supports employed Everett as an employee within the meaning of the FLSA and CWCA.

### General Allegations

26. Everett's employment at Supports was governed by the laws of the United States and Colorado and a contract of employment comprising the employee handbook.

27. Everett accepted the position with Supports because Supports implied that they would help her obtain her LPC by supervising her behavioral therapy hours.

28. Supports led Everett to believe that Carmen Sample (Sample) had supervised Richelle Reed (Reed) so she could obtain her license.

29. Further, Supports led Everett to believe that such supervision was the standard practice at Supports and other counseling companies.

30. When Everett accepted the position, she believed based on Supports representations that she would have an LCSW or LPC supervising her and that the licensed professional would sign off on her work.

31. Everett currently works in a substantially similar position as to the one she held at Supports and receives overtime if she works over 40 hours in a week or 12 in a day, and her supervisor expects to sign off on her behavioral hours even though nothing was explicitly said to this effect.

32. The FLSA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half times their regular rate of pay for any hours worked over forty in a week. 29 U.S.C. 207(a)(1). The Act exempts certain employees from the overtime requirements. However, an "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *See Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983).

33. The CWCA provides that, with certain exceptions, employers must pay employees overtime of at least one and one-half times their regular rate of pay for any hours worked over forty in a week or over twelve in a day.  7 COLO. CODE REGS. § 1103-1(4).

34. Pursuant to the FLSA, the test for the administrative exemption requires that an employee be paid at least $455 per week, and the employee's main, principal, and "primary duty" must consist of the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers, and the "primary duty" must include the exercise of discretion and independent judgment with respect to matters of significance.

4

35. As a general rule, "primary duty" means the major part, or over fifty percent, of the employee's time. *Department of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994); 29 C.F.R. 541.103. However, even if an employee does not spend fifty percent of her time in administrative functions, other factors should be considered to determine whether administration is an employee's primary duty, including, "the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. *Id.* 541.103.

36. Work "directly related to management or general business operations" includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, Internet and database administration; legal and regulatory compliance; and similar activities.

37. Discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision.

38. The term "matters of significance" refers to the level of importance or consequence of the work performed.

39. An employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly.

40. Although the FLSA provides for certain exemptions to the mandate of paying overtime compensation, no exemption applies in the instant matter.

41. Unless proven to be exempt from the protection of overtime laws, all employees are entitled to premium overtime pay for work in excess of forty hours per week.

42. Everett was required to work overtime hours, every week, working hours that were above and beyond her job description, in order to compensate for lack of staffing.

43. Evidence reflecting the precise number of overtime hours worked by Everett, is in the possession of Supports. If these records are unavailable, Everett may establish the hours she worked solely by her testimony, and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).

44. Everett was given the job title of Northern Region Program Manager for Behavior and Supported Life Skills by Supports and classified as exempt by Supports under the FLSA and CWCA.

45. The Northern Region was one of the three Regions ran by Supports, and its smallest Region.

46. The Behavior and Supported Life Skills program was the smallest program at Supports.

47. As the Northern Region Program Manager for Behavior and Supported Life Skills by Supports Everett belonged to Supports Leadership Team.

48. Above the Leadership Team was the Executive Leadership Team comprised of the Directors, the Leadership Team was comprised of the Managers of Supports programs. Below the Leadership Team was the regular Direct Care employees.

49. The Executive Leadership Team drove the direction of Supports and its operations and approved every action taken by the Leadership Team.

50. Everett was paid a salary of $864.67 per week or $21.62 per hour as a Northern Region Program Manager for Behavior and Supported Life Skills by Supports.

51. Everett's applicable overtime rate was $32.43.

52. Everett did not receive overtime compensation for the hours she worked in excess of forty in a week or over twelve in a day.

53. Supports provided Everett with specific instructions for each task she was responsible for, if Everett deviated from these instructions Supports would discipline her.

54. For example, Everett's entire day was governed by the Supports work flow management application Asana. Her job each day was to review and finish all of the red tasks, this required her to either make a comment or perform some work depending on the nature of the task. Should Everett not complete a red task Supports would write her up.

55. Everett spent about 25% of her time running Supports programs. Running the programs required her to respond to requests for proposals, attend meet and greets with those clients, attend Service Plan and Program Approved Support Agency meetings and meeting with her eight employees every week.

56. Because of the turnover of employees Everett spent about 75% of her time providing Direct Care and performing Case Management tasks, like every other Direct Care employee.

57. Because of this Everett's performance of Direct Care was her main, principal and primary duty.

58. Everett did not have the authority to hire employees. Everett could request that Supports advertise for an open position, after proving the need for the new employee and receiving approval from Executive Leadership. Everett would interview the potential employee and would made recommendations regarding hiring the applicant, but the Executive Leadership team made all hiring decisions.

59. Supports Executive Leadership team instructed Everett when to and how to discipline employees. Everett could not terminate an employee without being told to do so by Executive Leadership.

60. Everett never terminated an employee, however, many employees resigned.

61. Everett did not have the authority to discipline employees without first receiving approval from the Executive Leadership Team.

62. Everett had to discipline employees if the Executive Leadership Team felt that an employee needed to be disciplined. Everett had no discretion to decide if an employee should be disciplined or not.

63. Everett had no authority to commit Supports to matters that would have a significant financial impact, or any financial impact at all on Supports businesses.

64. For example, Everett told an employee that she would receive all of her unused Paid Time Off (PTO) when she resigned, however, when the employee resigned she did not receive her unused PTO, the employee complained to Supports accounting, which got Sample involved who instructed accounting not to pay the employee her PTO balance.

65. Everett made many suggestions to Supports regarding their operating practices, which Supports did not follow, as only the Executive Leadership Team had the authority to alter Supports' operating practices.

66. Everett implemented Supports long-term and short-term plan to achieve its business objectives, but Everett had no voice in what those objectives would be or how Supports would accomplish those objectives.

67. Executive Leadership determined what the objectives would be and how the objectives would be accomplished and then told Everett how Supports wanted her to reach those objectives.

68. In performing her job Everett simply followed Supports' well-established policies and procedures.

69. Everett's average day would begin with Direct Care work around 8:00 am, she would perform that work, and other tasks for a majority of the day.

70. At the end of the day Everett could finally complete her duties, which required her to enter the information Supports needed from her into Supports computer program, her day would usually end around 10:00 pm or 11:00 pm.

71. Everett would work approximately 70 hours to 75 hours per week.

72. Supports put anyone who complained about the hours and lack of compensation on a Performance Improvement Plan (PIP).

73. After an employee resigned from Supports the Regional Supervisor would instruct a Manager to go into Supports billing portal and bill Medicaid for an entire month of behavior sessions under the Managers name or face disciplinary action including being placed on a PIP or termination.

74. Supports also instructed Managers to bill Medicaid an entire unit even if the counselor had no face to face interaction with the client and spent the time knocking on the client's door, performing a "drive by" on the client's location, or only spent one minute with the client.

75. Supports instructed its employees to bill at 200% before they went on vacation.

76. In May of 2017 Everett resigned from the Northern Region Program Manager for Behavior and Supported Life Skills position and transitioned into an hourly direct care position.

77. Before transferring, Everett challenged supports billing of Medicaid informing them that its policies may violate the Medicaid rules.

78. Before transferring, Everett informed Richelle Reed (Reed) that she would like to take over a full case load of behavioral clients.

79. Reed never passed this information on to the new Manager, and Everett increasingly got less and less hours.

80. Everett increasingly got fewer and fewer hours. The hours she requested went to a new employee who Reed instructed the new Manager to interview and hire.

81. It became apparent to Everett that Supports was trying to force her to resign by not giving her work, she became convinced that if she did not resign supports would terminate her.

82. On August 1, 2018 Everett resigned from Supports.

83. On December 15, 2017 Everett sent a demand letter to Supports requesting that Supports tender to her the overtime pay Supports owes her.

84. As of the date of the filing of this complaint Supports has not tendered to Everett any monies.

**First Claim for Relief**
(Breach of Implied Contract – Approving Supervised Behavioral Hours)

85. Everett hereby incorporates the proceeding paragraphs as if stated, fully herein.

86. Supports offered to employ Everett.

87. Everett accepted Supports offer of employment.

88. In consideration Supports paid Everett a salary and Everett performed work for Supports.

89. An essential element of the contract was that Supports would supervise Everett's counseling hours and then sign off on them so that she could obtain her LPC.

90. In the counseling industry, when LPC or LCSW candidates are hired by a company, a licensed clinician, either an LPC or LCSW, supervises the LPCC's counseling hours, and approves them with their signature.

91. Upon information and belief, Carmen Sample supervised Richelle Reed's counseling hours.

92. Everett performed over 1200 hours of supervised counseling. Everett completed over 900 of these hours prior to transitioning to the part time counseling position in May, and 300 hours from May to August 2017.

93. Everett asked Reed to sign off on her hours, and Reed refused.

94. As a result of this breach Everett suffered damages in an amount to be calculated.

9

## Second Claim for Relief
(Promissory Estoppel – Approving Supervised Behavioral Hours)

95. Everett hereby incorporates the proceeding paragraphs as if stated, fully herein.

96. Supports implicitly promised that it would sign of on any supervised behavioral hours completed by Everett while working for Supports.

97. In the counseling industry it is regular practice of a company to supervise and approve hours completed by an LPC or an LCSW candidate.

98. In reliance on Supports representations Everett performed 1200 hours of supervised behavioral counseling hours.

99. To her detriment Supports refused to sign off on these hours.

100. As a result of this breach Everett suffered damages in an amount to be calculated.

## Third Claim for Relief
(Wrongful Termination in Violation of Public Policy)

101. Everett hereby incorporates the proceeding paragraphs as if stated, fully herein.

102. During the course of Everett's employment Supports instructed her to bill Medicaid for an entire month of behavior sessions under the Managers name after an employee quit, an entire unit even if the counselor had no face to face interaction with the client and spent the time knocking on the client's door, performing a "drive by" on the client's location, or only spent one minute with the client, and to bill Medicaid at 200% before she went on vacation.

103. After some time, Everett refused to bill Medicaid in these ways because she believed that it violated Medicaid's rules and regulations.

104. Supports was aware or reasonably should have been aware that Everett's refusal to comply with Supports instructions was based on Everett's reasonable belief that to do so would have violated Medicaid's rules and regulations.

105. Supports then reduced the hours she would receive as a Direct Care provider.

106. Everett interpreted the reduction of hours as Supports preparing to terminate her.

107. In lieu of termination Everett resigned.

108. As a result of Supports wrongful termination of Everett, she has suffered damages in an amount to be proved at trial.

## **Fourth Claim for Relief**
(Overtime pay under the Fair Labor and Standards Act)

109. Everett hereby incorporates the proceeding paragraphs as if stated, fully herein.

110. Supports at all relevant times was an employer within the meaning of the FLSA.

111. This court has jurisdiction over Everett's claims pursuant to 29 U.S.C. § 216(b).

112. Supports employed Everett within the meaning of the FLSA.

113. As stated herein, Everett was improperly classified by Supports as exempt; however, her work duties dictate that Supports should have classified her and compensated her as a non-exempt employee, even though her title was Northern Region Program Manager for Behavior and Supported Life Skills.

114. Supports scheduled Everett to work forty hours a week and instructed her to complete a time card indicating that she worked from 8 am to 4 pm Monday through Friday regardless of the number of hours she worked.

115. Everett regularly came into work before her scheduled start time.

116. Everett regularly stayed at work, worked after she was scheduled to leave for the day and worked from home.

117. Everett regularly came into work on her days off.

118. Everett worked approximately 70 – 75 hours a week.

119. Supports did not pay Everett overtime for these hours.

120. Everett's primary job duty was to provide Direct Care, and to follow Supports well established practices in documenting and managing the work of Direct Care providers.

121. Everett had no involvement with the general business operations of Supports.

122. Supports violated the FLSA by not paying Everett on a time-and-a-half basis, as required by the FLSA and the regulations promulgated thereunder by the U.S. Secretary of Labor, for time she spent working in excess of forty hours per week.

123. Supports' failure to pay Everett overtime pay as required by the FLSA was willful.

124. Everett is entitled, by virtue of Supports' violations of the FLSA, to recover time-and-a-half overtime pay for the hours she worked in excess of forty per week.

125. Everett is also entitled to recover from Supports an additional equal amount as liquidated damages, reasonable attorney fees, costs and interests, all as contemplated by 29 U.S.C. § 216(b) of the FLSA.

**Fifth Claim for Relief**
(Overtime pay under the CWCA, 7 COLO. CODE REGS. § 1103-1(4))

126. Everett hereby incorporates the proceeding paragraphs as if stated, fully herein.

127. Supports at all relevant times was an employer within the meaning of the CWCA.

128. Everett regularly worked more than 12 hours a day for Supports.

129. For example, each time she had to attend New Employee Orientation she also had to perform her regular duties. On these days she worked 16-hour days, not including travel time.

130. Pursuant to the Colorado Wage Claim Act, C.R.S.§ 8-4-101, *et seq*., Everett is entitled to recover all unpaid wages and compensation, plus a penalty of 125% of the first $7,500 of the unpaid amount and 50% of any additional amount as a result of Supports' failure to pay Everett's earned and unpaid wages and compensation following the written demand.

131. Everett is also entitled to an additional 50% penalty pursuant to C.R.S.§ 8-4-109 because Supports' failure to pay her overtime was willful.

132. Everett is entitled to recover her reasonable attorney's fees and costs incurred pursuant to C.R.S. § 8-4-110.

**Demand for Judgement**

WHEREFORE, Plaintiff, Emily Everett, respectfully prays for a judgment to be entered against Sample Supports, LLC as follows:

A. Against Sample Supports, LLC for specific performance on her breach of contract and promissory estoppel claims;

B. Against Sample Supports, LLC for front pay and back pay under Everett's wrongful termination claim;

12

C. Against Sample Supports, LLC for punitive damages under Everett's wrongful termination claim, as allowed by law;

D. Against Sample Supports, LLC for wages and compensation under the Fair Labor Standards Act;

E. Against Sample Supports, LLC for wages and compensation under the Colorado Wage Claim Act;

F. Against Sample Supports, LLC for liquidated damages under the Fair Labor Standards Act, as allowed by law

G. Against Sample Supports, LLC. for penalties under the Colorado Wage Claim Act, as allowed by law;

H. Against Sample Supports, LLC for the 50% increase on the penalty for willfulness as allowed under the Colorado Wage Claim Act;

I. Against Sample Supports, LLC. for attorney fees, under the Colorado Wage Claim Act and Fair Labor Standards Act, as allowed by law;

J. Costs, as allowed by law; and

K. Such other relief as the Court deems proper.

Respectfully submitted on this 13 June 2018

                                              Mitchiner Law, LLC

By:   /s/ Thomas H. Mitchiner
       Thomas H. Mitchiner, #47465
       *Attorney for Emily Everett*

Address of Plaintiff:
1728 Concord Dr.
Ft. Collins, CO 80526.

13